# EXHIBIT A

**Complaint Transmittal Cover Sheet**

| | |
|---|---|
| **To:** | Amar Behura, Interactive Media Technologies, Respondent |
| **From:** | TelCan Inc., Complainant |
| **Cc:** | National Arbitration Forum |
| **Date:** | March 30, 2017 |
| **Re:** | telcan.com |

The attached Complaint is being filed against you with the National Arbitration Forum ("Forum") pursuant to the Uniform Domain Name Dispute Resolution Policy ("Policy") adopted by the Internet Corporation for Assigned Names and Numbers ("ICANN") on October 24, 1999 and incorporated in your registration agreement with the registrar ("Registration Agreement") of your domain name(s). By submitting this Complaint to the Forum, Complainant agrees to abide and be bound by the provisions of the Policy, the ICANN Rules, and the Forum's Supplemental Rules.

**Until you are notified by the Forum that a proceeding has commenced, you have no duty to act with regard to this Complaint**.

- The Forum will examine the Complaint to determine whether it conforms to the ICANN Policy, Rules, and Supplemental Rules.

- If the Complaint conforms to those standards, the Forum will forward an official copy of the Complaint to you.

- *Once the official Complaint is forwarded to you*, you will have **twenty (20)** calendar days to submit a Response to both the Forum and the Complainant in accordance with the Policy, Rules, and Supplemental Rules.

- You may seek legal assistance to represent you in this administrative proceeding.

The Policy and Rules governing this proceeding can be found at:

    ICANN Policy                https://www.icann.org/resources/pages/policy-2012-02-25-en
    ICANN Rules                 https://www.icann.org/resources/pages/rules-be-2012-02-25-en
    Forum Supp. Rules       http://www.adrforum.com/UDRP

Alternatively, you may contact the Forum to obtain any of the above documents.

    Telephone:      (800) 474-2371 or (952) 516-6400
    E-mail:          info@adrforum.com

**Please provide the Forum with the contact information (mailing address, e-mail address, telephone number) where the official Complaint and other communications in the administrative proceeding should be sent.**



| | |
|---|---|
| *TelCan Inc.*<br>*2800 Skymark Ave., Suite 402*<br>*Mississauga, ON*<br>*L4W 5A6*<br>*Canada*<br><br>(**Complainant**)<br><br>-v-<br><br>*Amar Behura*<br>*Interactive Media Technologies*<br>*7999 N. Federal Hwy*<br>*Suite 400*<br>*Boca Raton, FL 33487*<br><br>(**Respondent**) | **File Number:**<br><br><br><br><br><br>**Domain Name in Dispute:**<br><br>TELCAN.COM |

## COMPLAINT IN ACCORDANCE WITH THE
## UNIFORM DOMAIN NAME DISPUTE RESOLUTION POLICY

[1.]   This Complaint is hereby submitted for decision in accordance with the Uniform Domain Name Dispute Resolution Policy ("UDRP"), adopted by the Internet Corporation for Assigned Names and Numbers ("ICANN") on August 26, 1999 and approved by ICANN on October 24, 1999, and the Rules for Uniform Domain Name Dispute Resolution Policy ("Rules"), with an effective date of July 31, 2015, and the FORUM's Supplemental Rules. Rule 3(b)(i).

[2.]   **COMPLAINANT INFORMATION**

    [a.]   Name:         TelCan Inc.
    [b.]   Address:      2800 Skymark Ave., Suite 402
                                 Mississauga, ON
                                 L4W 5A6
                                 Canada
    [c.]   Telephone:    905-804-9111
    [d.]   Fax:          905-804-9888
    [e.]   E-Mail:       mrashid@telcan.net

Rule 3(b)(ii).

[3.]   **COMPLAINANT AUTHORIZED REPRESENTATIVE**

    [a.]   Name:         Jeffrey M. Rosenfeld
                                 KRONENBERGER ROSENFELD, LLP
    [b.]   Address:      150 Post Street, Suite 520

|       |            | San Francisco, CA 94108 |
|-------|------------|-------------------------|
| [c.]  | Telephone: | (415) 955-1155          |
| [d.]  | Fax:       | (415) 955-1158          |
| [e.]  | E-Mail:    | jeff@krinternetlaw.com  |

Rule 3(b)(ii).

Complainant's preferred contact person for correspondence relating to this case:

| [a.] | Contact Name:  | Jeffrey M. Rosenfeld        |
|------|----------------|-----------------------------|
|      |                | KRONENBERGER ROSENFELD, LLP |
| [b.] | Contact Email: | jeff@krinternetlaw.com      |

Rule 3(b)(iii).

Complainant chooses to have this dispute heard before a single-member administrative Panel. Rule 3(b)(iv).

[4.]   **RESPONDENT INFORMATION**

| [a.] | Name:      | Amar Behura                  |
|------|------------|------------------------------|
|      |            | Interactive Media Technologies |
| [b.] | Address:   | 7999 N. Federal Hwy          |
|      |            | Suite 400                    |
|      |            | Boca Raton, FL 33487         |
| [c.] | Telephone: | 561-999-9116                 |
| [d.] | Fax:       | 561-999-9118                 |
| [e.] | E-Mail:    | amar@globaltel.com           |

Rule 3(b)(v).

[5.]   **RESPONDENT AUTHORIZED REPRESENTATIVE, IF KNOWN**

Complainant is not aware of any authorized representative for Respondent. Rule 3(b)(v).

[6.]   **DISPUTED DOMAIN NAME**

[a.]   Domain Name that is the Subject of this Complaint: **telcan.com**

[b.]   Registrar Information: Rule 3(b)(vii).

| [i.]   | Registrar's Name:  | GoDaddy.com, LLC             |
|--------|--------------------|------------------------------|
| [ii.]  | Registrar Address: | 14455 N. Hayden Rd. Ste. 226 |
|        |                    | Scottsdale, AZ 85260-6993    |
| [iii.] | Telephone Number:  | 480-624-2505                 |
| [iv.]  | E-Mail Address:    | abuse@godaddy.com            |

[c.]   Trademark/Service Mark Information: Rule 3(b)(viii).

| Mark   | Reg. No.            | Dates              | Goods/Services          |
|--------|---------------------|--------------------|-------------------------|
| TELCAN | 4830271 (Serial No. | DOFU:   01/19/1997 | IC 009, US 021 023 026  |
|        | 86455651).          | Filing: 11/16/2014 | 036 028. G&S: Pre-paid  |

| | | Registered: 10/13/2015 | telephone calling cards, magnetically encoded. IC 036, US 100 101 102. G&S: Mobile top up services. IC 038, US 100 101 104. G&S: Telecommunications services. |
|---|---|---|---|

[7.] **FACTUAL AND LEGAL GROUNDS**

This Complaint is based on the following factual and legal grounds. Rule 3(b)(ix).

A. <u>Summary of Facts</u>

1. **Complainant's Business and Use of TELCAN Mark**

Complainant TelCan Inc. ("TelCan") is an international telecommunications company based in Ontario, Canada. (Annex 1, Declaration of Mamoon Rashid in Support of Complainant TelCan's Complaint ("Rashid Decl.") ¶¶3, 5 & **Annex 1.A**.) For over twenty years, TelCan has provided telecommunication services such as international long distance, toll-free telephone services, and related products, such as pre-paid international calling cards, toll-free numbers, Virtual PBX, and business phone services to companies and consumers throughout the world. (Rashid Decl. ¶2.)

TelCan was founded in 1997 by three engineering students from the University of Waterloo in Canada. (Rashid Decl. ¶3.) By 2000, TelCan was providing international callback services to resellers around the world. (Rashid Decl. ¶4.) In 2003, the company started providing calling cards, toll free numbers, and a virtual system through its platforms to end users, agents, and resellers. (Rashid Decl. ¶4.) Since then, TelCan has continued to provide prepaid calling services to entrepreneurs and service providers, including in Europe, the Middle East, Africa, Canada, and North America. (Rashid Decl. ¶4.) Currently, the same three founders still own and manage the company, which operates outpost facilities in Canada and the United States. (Rashid Decl. ¶5.) Today, TelCan works with distributors as well as end-users and has over four million customers all over the world. (Rashid Decl. ¶5.)

Since January of 1997, TelCan has continuously marketed and sold its telecommunications-related goods and services using the TELCAN mark (the "Mark") both online and through brick-and-mortar channels, including cell phone and convenience stores in the United States and Canada. (Rashid Decl. ¶6.) TelCan has offered and sold its TELCAN-branded goods and services through numerous partnerships in multiple countries. (Rashid Decl. ¶6.)

In addition, since 1999, TelCan has used its Mark in connection with its domain name <telcan.net> (the "TelCan Website") to market and sell its telecommunications-related goods and services. (Rashid Decl. ¶7 & **Annex 1.B**.) Since its inception, the TelCan Website has been an interactive website where businesses and consumers can review TelCan's goods and services and directly purchase the same from TelCan. (Rashid Decl. ¶7 & **Annex 1.C**.)

TelCan owns an active trademark registration, Registration No. 4830271, for the TELCAN Mark for use in connection with its telecommunications-related goods and services (the "Registration"). (Rashid Decl. ¶8 & **Annex 1.D**.) Specifically, on November 16, 2014, TelCan

filed an application for the word trademark TELCAN with the United States Patent and Trademark Office ("USPTO") for use in connection with pre-paid telephone calling cards, mobile top up services, and telecommunications services. (Rashid Decl. ¶8 & **Annex 1.D**.) The application was published for opposition on July 28, 2015 and was registered on the USPTO's Principal Register on October 13, 2015. (Rashid Decl. ¶8 & **Annex 1.D**.) As the Registration confirms, TelCan's first use of this TELCAN Mark was January 19, 1997. (Rashid Decl. ¶8 & **Annex 1.D**.) Prior to and since obtaining the Registration, TelCan has continuously used the TELCAN Mark in commerce in connection with its online and in-person sales of telecommunications-related goods and services. (Rashid Decl. ¶8 & **Annex 1.D**.)

Over the last twenty years, TelCan has grown to be an internationally-recognized telecommunications company, and consumers have come to associate the TELCAN Mark with TelCan's goods and services. To solidify consumer recognition of its Mark, TelCan regularly spends six figures per year on marketing. (Rashid Decl. ¶9.) Further, TelCan actively advertises its goods and services online through Google AdWords and has advertised through newspapers, magazines, radio, and other websites. (Rashid Decl. ¶9.)

### 2. History of Disputed Domain and Respondent

According to historical WHOIS data, in 1997, an unknown third party registered the domain name <telcan.com> (the "Disputed Domain"). (Annex 2, Declaration of Jeffrey M. Rosenfeld in Support of Complainant TelCan's Complaint ("Rosenfeld Decl.") ¶2 & **Annex 2.A**.) According to website archives, from approximately 2001 to mid-2003, the Disputed Domain was used by a third party for Internet security services. (Rosenfeld Decl. ¶3 & **Annex 2.B**.) Also according to website archives, in or around July 2003, the Disputed Domain was advertised as "for sale." (Rosenfeld Decl. ¶4 & **Annex 2.C**.)

From approximately mid-2003 to mid-2006, the Disputed Domain was registered to an entity named "Ezcor," which was located at 200 Little Road, San Antonio, Texas. (Rosenfeld Decl. ¶5 & **Annex 2.D**.) However, no such address exists in San Antonio Texas, and there was no entity named "Ezcor" registered in Texas between 2003 and 2006. (Rosenfeld Decl. ¶¶6–7 & **Annex 2.E and 2.F**.) During this time, the Disputed Domain was used in connection with a website advertising international callback, toll-free calling cards, and toll-free phone services. (Rosenfeld Decl. ¶8 & **Annex 2.G**.)

In or around mid-2006, Respondent Amar Behura of Interactive Media Technologies, Inc., a Florida corporation, *dba* GlobalTel ("Respondent") acquired the Disputed Domain through an unknown process. (Rosenfeld Decl. ¶9 & **Annex 2.H**.) According to historical WHOIS data, on or around September 27, 2006, the administrative contact for the Disputed Domain changed from James Little in Texas to Respondent at "Behura, amar@globaltel.com, Interactive Media Technologies, Inc." in Florida. (Rosenfeld Decl. ¶9 & **Annex 2.H**.) According to website archives, in or around mid-2007, the website associated with the Disputed Domain changed from Ezcor's site to a site connected with Respondent and featuring Respondent's name. (Rosenfeld Decl. ¶11 & **Annex 2.J**.) On or around October 9, 2007, the registrant of the Disputed Domain changed from Ezcor to Respondent Interactive Media Technologies. (Rosenfeld Decl. ¶10 & **Annex 2.I**.) Since that time, the website associated with the Disputed Domain has been updated several times, but has always displayed Respondent's name (the "Disputed Website"). (*See* Rosenfeld Decl. ¶14 & **Annex 2.L**.)

The Disputed Website currently purports to offer international voice and communications technology for businesses and consumers, and specifically toll-free and VoIP access as well as pre-paid calling cards in the United States, Canada, and India. (Rosenfeld Decl. ¶14 & **Annex**

**2.L**.) The Disputed Website also links to the website at <globaltel.com>, which is apparently used for GlobalTel's offers for discount jail calls and postcards. (*See* Rosenfeld Decl. ¶14 & **Annex 2.L**.) The Disputed Website prominently features the TELCAN trademark at the top of the homepage and throughout the website. (Rosenfeld Decl. ¶15 & **Annex 2.M**.)

On information and belief, Respondent acquired and started using the Disputed Domain to confuse consumers, compete with Complainant, and divert Complainant's customers to the Disputed Domain and Disputed Website. (*See* Rashid Decl. ¶¶11–13.) In fact, Complainant has received numerous inquiries from its customers who were confused about whether the Disputed Domain was connected to Complainant's goods and services. (Rashid Decl. ¶11 & **Annex 1.F**.)

On information and belief, Respondent does not have a trademark registration for the mark TELCAN or any related marks. (Rashid Decl. ¶12.) Complainant has never licensed the TELCAN Mark to Respondent or otherwise authorized Respondent to use its Mark. (Rashid Decl. ¶12.)

On May 9, 2016, TelCan's representative, Amir Khan, emailed Respondent to inquire about purchasing the Disputed Domain; Respondent replied that "it's not for sale." (Rashid Decl. ¶13 & **Annex 1.H**.) TelCan previously inquired about purchasing the domain from Respondent, and Respondent replied with a demand of $50,000 for the Disputed Domain, which was far above the costs associated with registering and maintaining the domain name. (Rashid Decl. ¶13 & **Annex 1.G**.)

     **B.**     **Legal Analysis**

Paragraph 4(a) of the Policy requires a UDRP complainant to prove each of the following three elements to obtain an order that a domain name should be cancelled or transferred:

    (1)    The domain name registered by the respondent is identical or confusingly similar to a trademark or service mark in which the complainant has rights;

    (2)    respondent has no rights or legitimate interests in respect of the domain name; and

    (3)    the domain name has been registered and is being used in bad faith.

        **1.**    **The Disputed Domain is identical and confusingly similar to a trademark in which Complainant has rights. (Policy ¶4(a)(i).)**

As an initial matter, Complainant has bona fide rights in the TELCAN Mark, including because it has continuously used the TELCAN Mark since 1997, and it has owned a valid trademark registration for the TELCAN Mark since 2015. (Rashid Decl. *passim* & **Annex 1.D**.) The registration of a trademark is *prima facie* evidence of validity, which creates a rebuttable presumption that the mark is inherently distinctive and that the complainant has bona fide rights in that mark; the respondent then has the burden of refuting this presumption. *See Janus Int'l Holding Co. v. Rademacher*, D2002-0201 (WIPO Mar. 5, 2002) ("Panel decisions have held that registration of a mark is *prima facie* evidence of validity . . ."); *Men's Wearhouse, Inc. v. Wick*, FA117861 (Nat. Arb. Forum Sept. 16, 2002) ("Under U.S. trademark law, registered marks hold a presumption that they are inherently distinctive and have acquired secondary meaning."). Because TelCan owns a valid trademark registration to the TELCAN Mark, it has established that it has bona fide rights in the Mark.

Further, the Disputed Domain is identical and confusingly similar to the TELCAN Mark. Where a disputed domain name incorporates the entirety of the complainant's trademark, the

disputed domain is identical or confusingly similar to the complainant's mark as those terms are defined in the Policy. *See Xcentric Ventures, LLC d/b/a www.RipoffReport.com v. A-One Innovation Technologies Private Limited*, No. FA1101001367044 (Nat. Arb. Forum Mar. 3, 2011) (finding that domain name <ripoffreport.cc> was identical to the complainant's RIP-OFF REPORT mark); *Google Inc. v. Ravi Mani*, No. FA1006001330290 (Nat. Arb. Forum July 21, 2010) (highlighting "disputed domain name incorporates the entirety of Complainant's mark . . ."); *Hewlett-Packard Co. v. Zuccarini*, FA94454 (Nat. Arb. Forum May 30, 2000) (finding the domain name <hewlitpackard.com> confusingly similar to complainant's HEWLETT-PACKARD mark). Panelists have consistently found that addition of ".com" or other generic top-level domains is irrelevant in distinguishing the disputed domain from the complainant's mark. *See Katadyn N. Am. v. Black Mountain Stores*, FA0507000520677 (Nat. Arb. Forum Sept. 7, 2005) (addition of generic top-level domain is irrelevant in determining whether a domain name is identical to a mark). Moreover, "the prior registration date of the disputed domain names is irrelevant for the assessment of confusing similarity." *Meth Lab Cleanup, LLC v. Utah Crime Scene Cleaners*, FA1110001412301 (Nat. Arb. Forum Nov. 29, 2011).

Here, the Disputed Domain <telcan.com> consists entirely of the TELCAN Mark ("TelCan") plus ".com." The Disputed Domain is thus identical and confusingly similar to TelCan's TELCAN Mark and TelCan's domain name at <telcan.net>. *See Katadyn N. Am. v. Black Mountain Stores*, FA0507000520677 (Nat. Arb. Forum Sept. 7, 2005). An Internet user is likely to mistakenly type the domain name "telcan.com" instead of "telcan.net," and consumers have already been confused regarding the two websites. (Rashid Decl. ¶11 & **Annex 1.F**.)

Because TelCan owns valid trademark rights in the TELCAN Mark, and because the Disputed Domain is identical and confusingly similar to the TELCAN Mark, TelCan has satisfied the Policy ¶4(a)(i).

### 2. Respondent has no rights or legitimate interest in the Disputed Domain. (Policy ¶4(a)(ii).)

A domain name registrant generally lacks rights or legitimate interests in a domain name where it uses the domain to compete with a competitor's rights in a similar mark. *See Oki Data Americas, Inc. v. Albert Jackson*, D2004-0087 (WIPO March 24, 2004); *The Rockport Co., LLC v. Gerard A. Powell*, D2000-0064 (WIPO April 6, 2000); *CliC Goggles, Inc. v. Ernesto Duarte*, No. FA1006001327834 (Nat. Arb. Forum July 13, 2010) (using a variation on complainant's mark to redirect Internet users to a site not affiliated with complainant but offering similar competing products was not a bona fide offering of goods or services or a legitimate noncommercial or fair use under Policy ¶4(c)(i) or ¶4(c)(iii)); *Bank of Am. Corp. v. Nw. Free Cmty. Access*, FA0308000180704 (Nat. Arb. Forum Sept. 30, 2003) ("Respondent's demonstrated intent to divert Internet users seeking complainant's website to a website of respondent and for respondent's benefit is not a bona fide offering of goods or services under Policy ¶4(c)(i) and it is not a legitimate noncommercial or fair use under Policy ¶4(c)(iii)."); *Clear Channel Commc'ns, Inc. v. Beaty Enters.*, FA0211000135008 (Nat. Arb. Forum Jan. 2, 2003) (finding that respondent, as a competitor of the complainant, had no rights or legitimate interests in a domain name that utilized the complainant's mark for its competing website); *Xerox Corporation v. Xerox CopyExpress c/o Petronilo Sulit*, FA1006001330873 (Nat. Arb. Forum July 27, 2010) (respondent's use of the <xeroxcopyexpress.com> domain name to direct Internet users to respondent's own commercial website, which provided compatible consumables and supplies for copiers did not reflect a bona fide offering of goods or services); *Computerized Sec. Sys., Inc. v. Hu*, FA0305000157321 (Nat. Arb. Forum June 23, 2003) ("Respondent's appropriation of [Complainant's] SAFLOK mark to market products that compete with Complainant's goods does not constitute a bona fide offering of goods and services.").

Here, TelCan has continually used its TELCAN Mark since 1997 (and obtained trademark registration in 2015 for the Mark, which notices a date of first use in 1997). (Rashid Decl. *passim*.) By contrast, Respondent did not use the Disputed Domain for competitive telecommunication services until years later (approximately 2006 or 2007). (Rosenfeld Decl. ¶11 & **Annex 2.J**.) And then, Respondent used the Disputed Domain to sell goods and services that compete directly with TelCan's goods and services that it markets and sells in connection with the TelCan Mark. (Rosenfeld Decl. ¶14 & **Annex 2.l**.) Given TelCan's long-standing and continuous use of the TELCAN Mark, Respondent cannot establish that it has any rights or legitimate interests in the Disputed Domain, which comprises the entirety of the TELCAN Mark plus a generic top-level domain.

Moreover, the Panel can infer that Respondent was aware of the TELCAN Mark when it registered the Disputed Domain. Specifically, the fact that TelCan had used its TELCAN Mark for years prior to Respondent's registration of the Disputed Domain, and the fact that the Disputed Domain is identical to the TELCAN Mark, strongly implies that Respondent sought to trade off of the value that TelCan has developed in its Mark. Respondent's prior awareness of the TELCAN Mark further evidences Respondent's lack of rights and legitimate interests in the Disputed Domain. *See Bayer Aktiengesellschaft v. Dangos & Partners*, D2002-1115 (WIPO Feb. 3, 2003).

Finally, Respondent has used the Disputed Domain and Disputed Website to advertise goods and services that compete directly with the goods and services that TelCan offers on its website located at <telcan.net>. A respondent's use of the complainant's mark to divert Internet users to an unrelated commercial website is not a *bona fide* offering of goods or services or a legitimate noncommercial or fair use pursuant to Policy ¶4(c)(i) or Policy ¶4(c)(iii). *See Bank of Am. Fork v. Shen*, FA 699645 (Nat. Arb. Forum June 11, 2006) (finding that respondent's use of domain name to redirect Internet users to websites unrelated to a complainant's mark is not *bona fide* use under Policy ¶ 4(c)(i)); *Kaspersky Lab Zao v. uPort Inc.*, FA1006001328687 (Nat. Arb. Forum July 12, 2010) ("The Panel agrees and finds that Respondent's previous use of the <aspersky.com> domain name to display non-competing third-party links, presumably for financial gain, is not a use in connection with a *bona fide* offering of goods or services under Policy ¶ 4(c)(i) or a legitimate noncommercial or fair use under Policy ¶ 4(c)(iii)."); *Bank of Am. Corp. v. Nw. Free Cmty. Access*, FA 180704 (Nat. Arb. Forum Sept. 30, 2003) ("Respondent's demonstrated intent to divert Internet users seeking Complainant's website to a website of Respondent and for Respondent's benefit is not a bona fide offering of goods or services under Policy ¶ 4(c)(i) and it is not a legitimate noncommercial or fair use under Policy ¶ 4(c)(iii).").

In summary, Respondent has no rights or legitimate interests in the Disputed Domain under the Policy ¶4(a)(ii).

### 3. Respondent registered and is using the Disputed Domain in bad faith. (Policy ¶4(a)(iii).)

To prevail in a UDRP proceeding, the complainant must prove on the balance of probabilities that the disputed domain was registered and is being used in bad faith. *See Telstra Corp. Ltd. v. Nuclear Marshmallows*, D2000-0003 (WIPO Feb. 18, 2000). Paragraph 4(b) of the Policy provides guidance on how to implement this requirement, setting forth the following four non-exhaustive situations, any one of which can evidence bad faith:

(i) circumstances indicating that the respondent has registered or acquired the domain name primarily for the purpose of selling, renting, or otherwise transferring the domain name registration to the complainant who is the owner of the trademark or

(ii)        service mark or to a competitor of that complainant, for valuable consideration in excess of the respondent's documented out-of-pocket costs directly related to the domain name;

(ii)        the respondent has registered the domain name in order to prevent the owner of the trademark or service mark from reflecting the mark in a corresponding domain name, provided that the respondent has engaged in a pattern of such conduct;

(iii)       the respondent has registered the domain name primarily for the purpose of disrupting the business of a competitor; or

(iv)       by using the domain name, respondent has intentionally attempted to attract, for commercial gain, Internet users to respondent's website or other on-line location, by creating a likelihood of confusion with the complainant's mark as to the source, sponsorship, affiliation, or endorsement of the respondent's website or location or of a product or service on the site or location.

Registration and use of a domain name to redirect a competitor's intending customers to a website offering similar goods and services constitutes bad faith. *See CliC Goggles, Inc. v. Ernesto Duarte*, No. FA1006001327834 (Nat. Arb. Forum July 13, 2010) (respondent's use of domain name to redirect complainant's intended customers to a website offering eyewear products similar to and in competition with complainant's products disrupted complainant's business and reflected bad faith registration and use of domain); *Classic Metal Roofs, LLC v. Interlock Indus., Ltd.*, FA0606000724554 (Nat. Arb. Forum Aug. 1, 2006) (finding respondent registered and used <classicmetalroofing.com> domain name in bad faith by redirecting Internet users to respondent's competing website); *Disney Enters., Inc. v. Noel*, FA0309000198805 (Nat. Arb. Forum Nov. 11, 2003) ("Respondent registered a domain name confusingly similar to Complainant's mark to divert Internet users to a competitor's website. It is a reasonable inference that Respondent's purpose of registration and use was to either disrupt or create confusion for Complainant's business in bad faith pursuant to Policy ¶¶4(b)(iii) [and] (iv)."); *Juicy Couture, Inc. v. Wei Wang*, No. FA1009001345213 (Nat. Arb. Forum Oct. 31, 2010) (respondent's use of <juicycouture4sale.com> domain name to divert Internet users to its own commercial website where it offered competing products reflected bad faith registration and use).

Here, Respondent acquired the Disputed Domain years after TelCan began using its TELCAN Mark. Then, Respondent used the Disputed Domain to advertise goods and services that compete directly with the goods and services that TelCan offers in connection with its TELCAN Mark on its TelCan Website (e.g., telecommunications in the United States, India, and Canada). (*See* Rashid Decl. ¶11; Rosenfeld Decl. ¶14 & **Annex 2.L**.) Respondent's conduct reflects bad faith registration of the Disputed Domain for the primary purpose of disrupting the business of TelCan (a direct competitor) as well as bad faith use of the Disputed Domain with the intent to attract, for commercial gain, Internet users by creating confusion with Complainant's Mark.

Moreover, Respondent exhibited bad faith in offering to sell the Disputed Domain to TelCan for a sum that far exceeded any reasonable costs that Respondent incurred in acquiring and maintaining the domain. As discussed above, upon discovering that Respondent had acquired the Disputed Domain, TelCan sought to purchase the domain. At the time, Respondent said that it would sell the Disputed Domain to TelCan for $50,000; Respondent later said that the Disputed Domain was not for sale. A respondent's offer to sell a disputed domain for an amount far in excess of the respondent's out-of-pocket costs reflects bad faith under the Policy. *See OneWest Bank, FSB v. One West Capital a/k/a Andrew Mason*, FA1112001420470 (Nat. Arb. Forum Jan.

8

31, 2012) (Respondent exhibited bad faith when it offered to sell domain <onewestcapital.com> to complainant for $3,000,000 after complainant made initial offer); *W. West Investments, L.L.C. v. BoboInc*, FA1204001440069 (Nat. Arb. Forum May 27, 2012) (respondent exhibited bad faith when it offered to sell domain name <wellmanspub.com> to complainant for $5,000 after complainant made initial offer of $200); *Watch Empire, LLC d/b/a Timeandgems v. Muhammad Al-Quaid*, FA1208001456432 (Nat. Arb. Forum Sept. 18, 2012) (respondent exhibited bad faith when it offered to sell domain name <timeandgems.us> to complainant for $30,000 after complainant offered to purchase it for $11,700). Respondent's offer to sell the Disputed Domain to TelCan for $50,000—a number that far exceeded the domain's reasonable registration and maintenance costs—further reflects Respondent's bad faith.

Respondent will likely argue TelCan has waited too long to bring a complaint for the Disputed Domain. However, the doctrine of laches does not apply to these complaint proceedings. *See, e.g., Meth Lab Cleanup, LLC v. Utah Crime Scene Cleaners*, FA1110001412301 (Nat. Arb. Forum Nov. 29, 2011) ("[T]he equitable defense of laches does not properly apply in this Policy proceeding."); *Selena USA, Inc. v. Vertical Axis Inc.*, FA1206001448594 (Nat. Arb. Forum Aug. 10, 2012) (declining to apply laches despite delay of eleven years to bring a complaint); *Mars, Inc. v. Chen*, FA1109001405770 (Nat. Arb. Forum Oct. 11, 2011) (transferring domain despite respondent's argument that complainant did not pursue domain name for twelve years); *Tom Cruise v. Network Operations Center/Alberta Hot Rods*, D2006-0560 (WIPO July 5, 2006); *Computop Wirtschaftsinformatik GmbH v. Domain Admin.*, FA1106001394450 (Nat. Arb. Forum Aug. 8, 2011) (refusing to deny complaint on grounds of laches because respondent did not suffer material prejudice from delay in bringing the proceeding). Nonetheless, even considering laches does not retract from Respondent's bad faith. First, while Respondent may assert the Disputed Domain was registered in 1997, it was previously used as a website related to Internet security services, which was not in direct competition with Complainant. (*See* Rosenfeld Decl. ¶3 & **Annex 2.B**.) It appears Respondent did not use the Disputed Domain for directly competitive telecommunications services until approximately 2006 to 2007, which is well within the time frame to bring the present Complaint, especially given lack of any prejudice to Respondent. *See Mars, Inc. v. Chen*, FA1109001405770 (Nat. Arb. Forum Oct. 11, 2011).

Based on Respondent's registration and use of the Disputed Domain described herein, TelCan has demonstrated Respondent's bad faith as required under the Policy ¶4(a)(iii).

[8.] **REMEDY SOUGHT**

Complainant requests that the Panel issue a decision that the domain name registration be transferred to Complainant. Rule 3(b)(x); Policy ¶4(i).

[9.] **OTHER LEGAL PROCEEDINGS**

Complainant is not aware of any other legal proceedings that have been commenced or terminated in connection with or relating to any of the domain names that are the subject of this Complaint, including previous UDRP cases involving one or more of the domains at issue in this Complaint. Rule 3(b)(xi).

[10.] **MUTUAL JURISDICTION**

Complainant will submit, with respect to any challenges to a decision in the administrative proceeding cancelling or transferring the domain name, to the location of the principal office of the concerned registrar. Rule 3(b)(xiii).

9

[11.]    **CERTIFICATION**

Complainant agrees that its claims and remedies concerning the registration of the domain names, the dispute, or the dispute's resolution shall be solely against the domain-name holder and waives all such claims and remedies against (a) the FORUM and panelists, except in the case of deliberate wrongdoing, (b) the registrar, (c) the registry administrator, and (d) the Internet Corporation for Assigned Names and Numbers, as well as their directors, officers, employees, and agents.

Complainant certifies that the information contained in this Complaint is, to the best of Complainant's knowledge, complete and accurate, that this Complaint is not being presented for any improper purpose, such as to harass, and that the assertions in this Complaint are warranted under these Rules and under applicable law, as it now exists or as it may be extended by a good-faith and reasonable argument.

Respectfully Submitted,

_____
Jeffrey M. Rosenfeld

March 30, 2017